UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| MARION E. WOOD, JR.,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br>Commissioner of Social Security,<br><br>Defendant. | No. No. 2:13-CV-00190-JTR<br><br>ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT |

**BEFORE THE COURT** are cross-Motions for Summary Judgment. ECF Nos. 17, 24. Attorney Dana C. Madsen represents Plaintiff; Special Assistant United States Attorney Terrye E. Shea represents the Commissioner of Social Security (Defendant). The parties have consented to proceed before a magistrate judge. ECF No. 7. After reviewing the administrative record and the briefs filed by the parties, the court **GRANTS** Plaintiff's Motion for Summary Judgment and **DENIES** Defendant's Motion for Summary Judgment.

**JURISDICTION**

On February 16, 2010, Plaintiff filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning January 11, 2010. Tr. 141. Plaintiff indicated that he was unable to work due to impairments with his lower back, legs and hands. Tr. 298. The claim was denied initially, denied upon reconsideration, and Plaintiff subsequently requested a hearing. Tr. 141; 170-270. On February 4, 2011, ALJ R.J. Payne presided over

an administrative hearing, at which medical expert Anthony E. Francis, M.D., vocational expert R. Thomas McKnight, Ph.D., and Plaintiff, who was represented by counsel, testified. Tr. 41-83. The ALJ denied Plaintiff's claim on February 24, 2011. Tr. 141-55. The Appeals Council remanded the case to ALJ Payne to reconsider Plaintiff's RFC related to his severe mental impairments, and to obtain vocational expert testimony to clarify the effect of the mental limitations on the occupational base. Tr. 161-62.

The second hearing occurred on July 31, 2012, and again ALJ Payne presided. Tr. 84-127. At this hearing, medical expert Marian F. Martin, Ph.D., vocational expert Daniel McKinney, and Plaintiff, who was represented by counsel, testified. Tr. 86-126. The ALJ denied Plaintiff's claim on August 20, 2012. Tr. 15-29. The Appeals Council declined review. Tr. 1-3. The instant matter is before this court pursuant to 42 U.S.C. § 405(g).

## STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, and the briefs of the parties and thus, they are only briefly summarized here. At the time of the first hearing, Plaintiff was 47 years old, lived with his wife and one son. Tr. 293; 378. He had received special education instruction beginning in the second grade, and he dropped out of school in the eleventh grade. Tr. 379.

Plaintiff testified that the pain in his back and legs is severe, and he spends on average, between four and five hours per day in bed. Tr. 95. Plaintiff also testified that he started using a cane after he fell, and could not get up without assistance. Tr. 95-96. He said he continues to use a cane because his leg "is just still dead on me." Tr. 96. Plaintiff testified that he can walk half a block, and can stand for five to ten minutes at a time. Tr. 99. He said he can sit for 15 to 20 minutes before he has to change positions. Tr. 99. He said it hurts to climb stairs, he can carry only a gallon of milk, and his back pain keeps him from sleeping more

than four to six hours per night.  Tr. 100.  Plaintiff also said he thinks about suicide "all the time."  Tr. 104.

On his initial application for benefits, Plaintiff indicated that he watered the plants and lawn, prepared meals, swept the floor and shopped once per week at the grocery store.  Tr. 306-08.  He reported his hobbies as fishing and watching television with his wife.  Tr. 309.  Plaintiff has previously worked as an automobile mechanic, cabinet assembler, and automobile wrecker.  Tr. 115-16.

## STANDARD OF REVIEW

The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities.  *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  The ALJ's determinations of law are reviewed *de novo*, with deference to a reasonable construction of the applicable statutes.  *McNatt v. Apfel*, 201 F.3d 1084, 1087 (9th Cir. 2000).   The decision of the ALJ may be reversed only if it is not supported by substantial evidence or if it is based on legal error.  *Tackett v. Apfel*, 180 F.3d 1094, 1097 (9th Cir. 1999).  Substantial evidence is defined as being more than a mere scintilla, but less than a preponderance.  *Id.* at 1098.  Put another way, substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Richardson v. Perales, 402 U.S. 389, 401 (1971).*  If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the ALJ.  *Tackett*, 180 F.3d at 1097; *Morgan v. Commissioner of Social Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  *Brawner v. Secretary of Health and Human Services*, 839 F.2d 432, 433 (9th Cir. 1988).  If substantial evidence supports the administrative findings, or if conflicting evidence supports a finding of either disability or non-disability, the ALJ's determination is conclusive.  *Sprague v. Bowen*, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## SEQUENTIAL PROCESS

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520(a), 416.920(a); *see Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987). In steps one through four, the burden of proof rests upon the claimant to establish a prima facie case of entitlement to disability benefits. *Tackett*, 180 F.3d at 1098-99. This burden is met once a claimant establishes that a physical or mental impairment prevents him from engaging in his previous occupation. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If a claimant cannot do his past relevant work, the ALJ proceeds to step five, and the burden shifts to the Commissioner to show that (1) the claimant can make an adjustment to other work; and (2) specific jobs exist in the national economy which claimant can perform. *Batson v. Commissioner of Social Sec. Admin.*, 359 F.3d 1190, 1193-94 (2004). If a claimant cannot make an adjustment to other work in the national economy, a finding of "disabled" is made. 20 C.F.R. §§ 404.1520(a)(4)(I-v), 416.920(a)(4)(I-v).

## ALJ'S FINDINGS

At step one of the sequential evaluation process, the ALJ found Plaintiff had not engaged in substantial gainful activity since January 11, 2010, the alleged onset date. Tr. 17. At step two, the ALJ found Plaintiff has had the following severe impairments: degenerative disc disease of the lumbar spine with intermittent radiculopathy, degenerative disc disease of the cervical spine, chronic obstructive pulmonary disease, learning disorder not otherwise specified, major depressive disorder, and somatoform disorder not otherwise specified. Tr. 17. At Step Three, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 4504, Subpart P, Appendix 1 (20 C.F.R. §§ 416.929(d), 416.925 and 416.926). Tr. 21. The ALJ concluded that Plaintiff has the residual functional capacity to perform light work with some nonexertional

1 | limits. Tr. 22-23.  The ALJ found that Plaintiff is capable of performing past
2 | relevant work as a cabinet assembler.  Tr. 27.  Alternatively, the ALJ concluded
3 | that considering Plaintiff's age, education, work experience and residual functional
4 | capacity, jobs exist in significant numbers in the national economy that Plaintiff
5 | can perform, such as small products assembler, packer/inspector, small parts and
6 | product inspector, and table worker.  Tr. 28.  As a result, the ALJ concluded
7 | Plaintiff was not disabled as defined by the Social Security Act.  Tr. 29.

## ISSUES

Plaintiff contends that the ALJ erred by: (1) failing to find that Plaintiff met Listing 1.02; (2) improperly weighing the medical opinion evidence; and (3) finding Plaintiff was not credible.  ECF No. 17 at 10-18.

**1.     Listing 1.02**

Plaintiff contends that the ALJ erred by failing to credit the testimony of non-examining expert Anthony E. Francis, M.D., who, according to Plaintiff, opined that Plaintiff's impairments meet Listing 1.02 related to his back impairment.  ECF No. 17 at 12-13.  In response, Defendant points out that during both administrative hearings, Plaintiff's counsel waived the issue of whether his impairments meet or equal a Listing.  ECF No. 24 at 10-11.

The Commissioner has promulgated a "'Listing of Impairments' . . . considered so severe that they are irrebuttably presumed disabling, without any specific finding as to the claimant's ability to perform [her] past relevant work or any other jobs." *Lester v. Chater*, 81 F.3d 821, 828 (9th Cir. 1995).  A claimant is "conclusively disabled if [his] condition either meets or equals a listed impairment." *Id.* (citing 20 C.F.R. § 404.1520(d)).  Medical equivalence will be found "if findings related to your impairments are at least of equal medical significance to those of a listed impairment."  20 C.F.R. §§ 404.1526(b)(3), 416.926(b)(3).  Equivalence is determined on the basis of a comparison between the "symptoms, signs and laboratory findings" about the claimant's impairment as

evidenced by the medical records "with the medical criteria shown with the listed impairment." 20 C.F.R. §§ 404.1529(d)(3), 416.929(d)(3).

If a claimant has more than one impairment, the Commissioner must determine "whether the combination of impairments is medically equal to any listed impairment." 20 C.F.R. §§ 404.1526(b)(3), 416.926(b)(3). The claimant's symptoms "must be considered in combination and must not be fragmentized in evaluating their effects." *Lester,* 81 F.3d at 829 (citations omitted). The failure to do so is legal error requiring remand. *Id.* at 830.

An ALJ must make specific findings about equivalency only when the claimant presents a reasonable theory as to how his impairments meet or equal the Listings. *Lewis v. Apfel,* 236 F.3d 503, 513 (9th Cir. 2001) (finding no error when ALJ did not make detailed findings regarding equivalency because claimant "has offered no theory, plausible or otherwise, as to how his seizure disorder and mental retardation combined to equal a listed impairment"). If the Plaintiff presents a theory of equivalency, "the ALJ must explain adequately his evaluation of . . . the combined effects of the impairments." *Marcia v. Sullivan*, 900 F.2d 172, 176 (9th Cir. 1990).

In this case, at the conclusion of the first hearing on February 4, 2011, Plaintiff's counsel waived the issue of whether his condition met or equaled a Listing. Tr. 83. At the conclusion of the second hearing on July 31, 2012, Plaintiff's counsel again stipulated that the evidence did not establish Plaintiff met or equaled a Listing. Tr. 126.

An argument not raised below is deemed waived. *See Warre v. Comm'r of Soc. Sec. Admin.*, 439 F.3d 1001, 1007 (9th Cir. 2006) (Plaintiff waived issue when she argued to the ALJ her condition was functionally equivalent to a listing, but failed to raise it in the district court); *see also Edlund v. Massanari*, 253 F.3d 1152, 1158 n.7 (9th Cir. 2001) (issues raised for the first time on appeal are waived and will not be considered). In this case, Plaintiff's counsel waived this issue at both

administrative hearings. As such, the issue of whether Plaintiff's impairments met or equaled a Listing is not preserved for review.[1]

**2.    Medical opinion evidence**

Plaintiff contends that the ALJ erred in weighing the medical evidence. ECF No. 17 at 13-15. In weighing medical source opinions in Social Security cases, the Ninth Circuit distinguishes among three types of physicians: (1) treating physicians, who actually treat the claimant; (2) examining physicians, who examine but do not treat the claimant; and (3) non-examining physicians, who neither treat nor examine the claimant. *Lester*, 81 F.3d at 830. Generally, more weight should be given to the opinion of a treating physician than to the opinions of non-treating physicians. *Id.* Similarly, an examining physician's opinion is generally entitled to more weight than a non-examining physician's opinion. *Id.*

When a conflict exists between the opinions of a treating physician and an examining physician, the ALJ may disregard the opinion of the treating physician only if he sets forth "specific and legitimate reasons supported by substantial evidence in the record for doing so." *Id.* While the contrary opinion of a non-

---

[1]Even if the issue was preserved, Plaintiff's assertion is without merit. Plaintiff argues that at the first hearing, testifying medical expert Anthony E. Francis, M.D., would have found Plaintiff's impairment met or equaled a Listing, but he did not have all the medical records. ECF No. 17 at 13. However, Plaintiff ignores the fact that the missing medical records were read aloud to the doctor during the hearing, and the doctor asked Plaintiff several questions related to the information in those records. Tr. 46-54. After hearing all the evidence, Dr. Francis noted evidence of "radiculopathy at different times," but he concluded that no evidence established radiculopathy persisted for twelve months. Tr. 53-54. As a result, even if the issue was properly preserved, evidence does not exist that Plaintiff's impairments met or equaled Listing 1.02 or 1.04.

examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion, a non-examining physician's opinion may constitute substantial evidence when consistent with other independent evidence in the record. *Magallanes v. Bowen,* 881 F.2d 747, 752 (9th Cir. 1989).

### a. Dennis R. Pollack, Ph.D.

Plaintiff contends that the ALJ provided invalid reasons for rejecting the opinion of Dr. Pollack. ECF No. 17 at 14-15.

On January 20, 2011, Dennis R. Pollack, Ph.D., examined Plaintiff and administered several objective tests. Tr. 473-82. Dr. Pollack noted that the results of the MMPI-2 revealed a "mildly elevated F-scale suggesting that he may have been exaggerating his difficulties or simply being honest about his personal history." Tr. 476-77. Dr. Pollack concluded that Plaintiff's tests indicated "an individual who presents himself as being physically ill when there is little medical evidence to support the claim. He is very concerned with [his] physical functioning and tend[s] to overreact to minor stress with physical complaints. He is anxious, tense and nervous …." Tr. 478. Dr. Pollack diagnosed Plaintiff with somatoform disorder, NOS, alcohol and amphetamine dependence in remission, and cognitive disorder, NOS. Tr. 478.

Dr. Pollack completed a Mental Medical Source Statement form. Tr. 479-82. He assessed Plaintiff with marked limitations in both the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and in the ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. Tr. 480. Dr. Pollack assessed Plaintiff with moderate limitations in the ability to understand and remember detailed instructions and carry out detailed instructions. Tr. 479-80.

The ALJ rejected the opinions of Dr. Pollack on three bases: (1) Dr. Pollack's opinion was inconsistent with his own narrative and the longitudinal record; (2) Dr. Pollack is always biased in favor of claimants; and (3) Dr. Pollack's interpretation of Plaintiff's test results were interpreted differently by non-examining physician Dr. Martin.  Tr. 26.

First, while an ALJ properly discounts a physician's opinion if it is contrary to his own records, in this case, the ALJ failed to specify the findings that were contradictory.  *See Johnson v. Shalala*, 60 F.3d 1428, 1432-33 (9th Cir. 1995) (ALJ properly considers the inconsistency of conclusions with the physician's own findings in rejecting physician's opinion).  Additionally, the ALJ must do more than merely state his conclusions: "[h]e must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Id.* (*citing Embrey v. Bowen*, 849 F.2d 418, 421-22 (9th Cir. 1988)).  In this case, the ALJ provided additional analysis of Dr. Pollack's opinion, but he failed to provide an explanation, citation to the record, or meaningful analysis to support his cursory conclusion related to inconsistencies.  *See*, *Embrey,* 849 F.2d at 421 ("To say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim.")   As a result, this reason is not specific and legitimate.

The ALJ's second reason for rejecting Dr. Pollack's opinion requires remand to a new ALJ.  The ALJ noted that Dr. Pollack's opinion that Plaintiff had marked limitations in his various abilities related to completing a normal workday and work week should be given "absolutely NO weight."  Tr. 26.  The ALJ reasoned: "This psychological evaluation was requested by the attorney who is known to regularly seek Dr. Pollack's evaluation of a claimant's mental status, which, not surprisingly, are always favorable to the claimant." Tr. 26.  The ALJ plays a

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 9

crucial role in the disability review process. *Miles v. Chater*, 84 F.3d 1397, 1401 (11th Cir. 1996). The Eleventh Circuit noted that the impartiality of the ALJ is critical to determinations of disability:

> Not only is [an ALJ] duty-bound to develop a full and fair record, [the ALJ] must carefully weigh the evidence, giving individualized consideration to each claim that comes before him [or her]. Because of the deferential standard of review applied to [the] decision-making, the ALJ's resolution will usually be the final word on a claimant's entitlement to benefits. The impartiality of the ALJ is thus integral to the integrity of the system. *See Johnson v. Mississippi,* 403 U.S. 212, 216, 91 S.Ct. 1778, 1780, 29 L. Ed. 2d 423, 427 (1971) (citations omitted) ("Trial before "an unbiased judge is essential to due process.").

*Miles*, 84 F.3d at 1401. The facts presented in *Miles* are similar to those in this case. In *Miles,* the ALJ analyzed the medical opinion evidence and added that a physician expert "concluded (as he usually does) that she was totally disabled." *Miles,* 84 F.3d at n.4 (parenthetical included in original). The *Miles* court found that this comment from the ALJ, "without any evidence in support thereof, reflect that the process was compromised." *Id.* at 1401. The *Miles* court held that the Plaintiff was "entitled to an unbiased reconsideration of her application for benefits before a different ALJ." *Id.; see also Reed v. Massanari,* 270 F.3d 838, 844 (9th Cir. 2001) (remand to a new ALJ required after ALJ opined the two available specialists "are totally unreliable" because they conclude "everybody is disabled").

In this case, without supporting evidence in the record, the ALJ rejected Dr. Pollack's opinion because the ALJ's personal belief that Dr. Pollack's opinions are "not surprisingly … always favorable to the claimant." Tr. 26. As in *Miles*, the ALJ's comment in this case reflects that the integrity of the process was compromised and Plaintiff is similarly entitled to an unbiased reconsideration of his application for benefits before a new ALJ. *See* 20 C.F.R. § 404.940 (providing

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 10

as a remedy the holding of a new hearing before another ALJ); *see also Ventura v. Shalala*, 55 F.3d 900 (3rd Cir. 1995). Because of the ALJ's stated bias against Dr. Pollack, remand to a new ALJ is required.

The third reason provided by the ALJ was also error. The ALJ indicated that he rejected Dr. Pollack's interpretation of the results from tests he administered, and instead adopted the interpretation of reviewing physician Dr. Martin:

> The MMPI in Dr. Pollack's examination contained a[n] elevated F-scale, as well as significant elevation of five of the clinical scales, suggesting the claimant may have been exaggerating his difficulties. The testimony of Dr. Martin provides detailed reasons why Dr. Pollack's mental assessment and his mental limitations should be given no weight.

Tr. 26-27. First, the ALJ failed to identify the "detailed reasons" provided by Dr. Martin that justified a different interpretation of the results from the tests administered by Dr. Pollack. Additionally, "the contrary opinion of a non-examining medical expert does not alone constitute a specific, legitimate reason for rejecting a treating or examining physician's opinion." *Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001), citing *Magallanes*, 881 F.2d at 752; see also *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990) ("The nonexamining physicians' conclusion, with nothing more, does not constitute substantial evidence, particularly in view of the conflicting observations, opinions, and conclusions of an examining physician."). As such, the ALJ's preference for the non-examining physician opinion over the examining physician's opinion, without valid explanation, is error. On remand, the new ALJ should reconsider the opinion from Dr. Pollack.

b. **Marian F. Martin, Ph.D.**

Plaintiff contends that the ALJ erred by giving great weight to non-examining physician, Marian F. Martin, Ph.D., and that none of the reasons offered by the ALJ were specific, legitimate and supported by the record. ECF No.

17 at 13-14.

Marian Martin, Ph.D., testified at the second administrative hearing held on July 31, 2012. Tr. 88-94. Dr. Martin testified that after reading Plaintiff's medical records, she assessed Plaintiff with no limitation in activities of daily living, mild difficulties in social functioning and moderate difficulties in concentration, persistence and pace. Tr. 91; 636. She also completed a Psychiatric Review Technique form, and a Mental Medical Source Statement. Tr. 626-43.

In the Mental Medical Source Statement, Dr. Martin assessed Plaintiff with two moderate limitations – in the ability to understand and remember detailed instructions and in the ability to carry out detailed instructions. Tr. 640-41.

The ALJ gave Dr. Martin's testimony significant weight "due to her opportunity to review the <u>entire</u> longitudinal record to arrive at her conclusions." Tr. 26. However, the fact that Dr. Martin reviewed the entire medical record does not provide a basis to give her opinions more weight than any other doctor. Such reasoning contradicts well established law that generally, treating and examining physician opinions are entitled to greater weight than non-examining physicians. *Lester*, 81 F.3d at 830. The ALJ's reasoning, if allowed to stand, would mean that every testifying, non-examining physician opinion would be entitled to the greatest weight simply because such physicians reviewed an entire longitudinal record. Because this contradicts well-established case law, this reasoning is invalid.

The ALJ also gave Dr. Martin's conclusions significant weight on the basis that they "were well-explained in her persuasive testimony, and generally consistent with the opinion of Dr. Jackline." Tr. 26. The ALJ failed to identify which findings were "well-explained," and also failed to explain why the testimony was persuasive. When providing reasons for rejecting opinion evidence, the ALJ should provide "a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). The ALJ failed

to do so. Moreover, the ALJ's simple conclusion that Dr. Martin's opinions were "generally consistent" with examining physician Dr. Jackline is similarly not sufficiently detailed. On remand, the ALJ should reconsider the medical opinions and provide a valid, detailed analysis.

**3.      Credibility**

Plaintiff contends that the ALJ erred by finding his allegations of the severity of his symptoms was not credible. ECF No. 17 at 16-18.

The ALJ found Plaintiff's testimony was not credible for several reasons,[2] including his failure to seek medical treatment, and the fact of his application for unemployment benefits undercut his allegations of pain. Tr. 24.

First, the ALJ found Plaintiff was not credible based upon his infrequent and "essentially routine" treatment records, and commented:

> Granted, the claimant has stated he does not have insurance and owes money to his doctors and therefore cannot seek much medical care, but the undersigned notes that if his pain and limitations are as disabling as he claims, there are resources in this community, such as the CHAS clinic, that will support an individual in such cases, yet he has not sought such care.

Tr. 24. An "unexplained, or inadequately explained, failure to seek treatment may be the basis for an adverse credibility finding unless one of a 'number of good reasons for not doing so' applies." *Orn v. Astrue*, 495 F.3d 625, 638 (9th Cir. 2007). But, "[d]isability benefits may not be denied because of the claimant's

---

[2]The ALJ also offered additional reasons for finding negative credibility: Plaintiff's symptoms were controlled by medication and his depression was deemed "mild," and Plaintiff's activities of daily living contradicted his pain complaints. Tr. 24. Because this case requires remand, the court addresses only the legally invalid reasons and does not comment on the remaining factually based findings, in light of the fact a new credibility analysis is required on remand.

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 13

failure to obtain treatment he cannot obtain for lack of funds." *Gamble v. Chater*, 68 F.3d 319, 321 (9th Cir. 1995).

The fact that Plaintiff could not afford to pay for medical care, and he had inadequate or no health insurance, is sufficient to overcome the ALJ's presumption that he did not seek medical care because his symptoms were not as severe as alleged. Moreover, the ALJ's speculation about the availability of free medical services and about Plaintiff's eligibility, or efforts to obtain such care, is not supported by the record. No evidence exists in the record to establish that Plaintiff rejected or refused available, free medical care and, thus, the ALJ's reliance upon such speculation to find Plaintiff lacked credibility, is error.

Next, the ALJ concluded that Plaintiff's claim for unemployment compensation in April 2010, the fourth quarter of 2010, and for all quarters of 2011, reveal that Plaintiff certified that he was able to work and, thus, is contrary to his application for social security disability benefits. Tr. 25. Plaintiff asserts it was legal error for the ALJ to rely on his receipt of unemployment benefits in making his adverse credibility determination. ECF No 17 at 17-18.

During the first hearing on February 4, 2011, the Plaintiff testified that he had received unemployment insurance benefits after he was let go from his job in January 2010. Tr. 71. At that hearing, in response to questions from the ALJ, Plaintiff responded that he was receiving unemployment benefits. Tr. 71. Plaintiff also testified at that hearing that he applied to fast-food restaurants, and for parts-puller jobs, but when he revealed he had lower back problems, he was "dismissed." Tr. 72. The record contains a computer generated report described as: "New Hire, Quarter Wage, Unemployment Query (NDNH)" that indicates Plaintiff received unemployment income in 2010. Tr. 278-79. Neither the ALJ nor the parties cite to additional records that reveal the details of Plaintiff's assertions made in connection with his request for unemployment benefits.

In *Carmickle,* the ALJ "gave less weight to [the claimant's] testimony

because he received unemployment benefits during the time he alleges disability." *Carmickle v. Comm'r,* 533 F.3d 1155, 1161 (9th Cir. 2008). The Ninth Circuit held that this finding was not supported by substantial evidence: "while receipt of unemployment benefits can undermine a claimant's alleged inability to work fulltime, the record here does not establish whether [the claimant] held himself out as available for full-time or part-time work. Only the former is inconsistent with his disability allegations." *Id.* at 1161-62 (citations omitted).

In this case, the ALJ concluded that Plaintiff's acknowledgement that he received unemployment benefits, on its face, was enough to discredit his claim of disability:

> The claimant's receipt of unemployment compensation in April 2010 and the 4th quarter of 2010 and for all four quarters of 2011 is particularly problematic, given the requirement to certify that the individual applying for such benefits is ready, willing, and able to work – hence, not disabled."

Tr. 25 (emphasis in original) (parenthetical references omitted). However, in this case, the documentation in the record regarding unemployment benefits is a two-page printout that reflects only that Plaintiff received unemployment benefits for the four quarters of 2009 and the four quarters of 2010. Tr. 278-79. The record contains no certification by Plaintiff that he was physically and mentally able to work full-time. Accordingly, as in *Carmickle,* the ALJ's finding that Plaintiff's receipt of unemployment benefits as a basis for his adverse credibility finding was not supported by substantial evidence, and thus was in error. On remand, the new ALJ should reconsider Plaintiff's credibility and provide a new analysis.

## CONCLUSION

Having reviewed the record and the ALJ's findings, the court concludes the ALJ's decision is based on legal error, and requires remand. On remand, the new ALJ is directed to reconsider Plaintiff's credibility, and the medical opinions and

provide specific, valid reasons for the weight assigned to each medical opinion, such that a reviewing court may understand the basis of the ALJ's conclusions. The decision is, therefore, **REVERSED** and the case is **REMANDED** for further proceedings consistent with this opinion.  Accordingly,

**IT IS ORDERED**:

1. Plaintiff's Motion for Summary Judgment, **ECF No. 17**, is **GRANTED.**  The matter is remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. § 405(g).

2. Defendant's Motion for Summary Judgment, **ECF No. 24**, is **DENIED.**

3. An application for attorney fees may be filed by separate motion.

The District Court Executive is directed to file this Order and provide a copy to counsel for Plaintiff and Defendant. Judgment shall be entered for Plaintiff and the file shall be CLOSED.

DATED September 8, 2014.



_____
JOHN T. RODGERS
UNITED STATES MAGISTRATE JUDGE

ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT - 16